May it please the Court, this case requires the interpretation of a risk that peerless never agreed to cover. Vandalism or theft in a building vacant for more than 60 days. And the mortgage holders provision of the insurance of Illinois law. In the trial court below, the parties presented cases from other jurisdictions. And we readily acknowledge that there are two lines of authority. The greater weight of which favors your opponent. If you start counting them up numerically. Actually, there's three on his side and three on ours. Well, you're counting, I think, a federal district court opinion. At any rate, go ahead. Judge Mitchell's thoughtful opinion sided with the other line of authority, which considers vacancy to be a breach of the insurance contract. Peerless respects his decision. No, it doesn't. I don't think they consider it to be a breach of the contract. I think they consider it to be an act of the insured. Which the insured breached. No, no, it's not a breach. It's not a breach. That's what the case is. No, it doesn't. It doesn't, counsel. Because I've got the cases and they're here. It says that vacancy within 60 days prior to a loss in a standard mortgage clause is an act of the insured. It is an act of the insured. In fact, one case calls it a failure to comply with a condition subsequent, not a condition preceding. And so the question becomes, really, is whether allowing this building to be vacant 60 days prior to the loss was an act of the named insured. Because if it was, you have to pay under the mortgage clause to the mortgage agent. First of all, the mortgage clause in this case does not use the word neglect or omission, which is in other parts of the policy. So not having those words in there is relevant. The cases that you've looked at that talk about it being an act, the insured has undertaken an affirmative obligation. That is not true. Sure it is. I have, counsel, no, no, you cannot misrepresent the cases. Several of these cases have mortgage clauses that are exactly word for word your mortgage clause. The only one that's word for word is Commerce Bank. Your mortgage clause says if we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgage holder will still have the right to receive loss payment if the mortgage holder does. And then there are three things there. So the question that I have for you is whether allowing the building to remain vacant for a period of 60 days prior to loss is an act of the insured. It is not. It is not an act of the insured. It's not the doing of something. It is not? You're focusing on the second part of the test. The first part of the test under the mortgage clause is whether or not there is a covered loss. In this policy, under these facts, there was never a covered loss. Counsel, counsel, do you want me to read what your policy says to you? Your policy says we will not pay for any loss or damage caused by any of the following even if they are covered in causes or losses. I agree with that. And the act of the insured is taking the loss out of coverage. But if you look at paragraph B, before we even get to the paragraph that you're looking at, Your Honor, it says we will pay for covered loss of damage to the building. So the first test and the better reason cases say we have to look to see if this was a covered loss first. Well, my question is why would it say we will not pay even if it is a covered loss? That doesn't make any sense. Vandalism is a covered loss under your policy. Theft is a covered loss under your policy. Excuse me. Attempted theft is a covered loss under your policy. There is no reference to theft or vandalism or attempted theft in exclusions in your policy, not even mentioned there. My big question is how do you define what occurred here? Was it a violation of the condition subsequent? No. No? But you do cover losses for buildings that are vacant as long as they're not vacant for 60 days prior to loss. And if it doesn't involve vandalism or theft or the other items that are listed, there's coverage as well. It's just the loss is reduced by 15%. And if they do lease the building more than 31% We understand what it takes to be vacant. Coverage expands. And it's not a Counsel, that's not what I'm asking. If vandalism, theft, or attempted theft are in fact covered losses under this policy, which they are, simply, and there is no exclusion for vandalism, theft, or attempted theft in vacant buildings per se, the only time you don't have to pay under this policy is if the building is vacant for more than 60 days prior to the loss. That's as simple as simple can be, and that's what this policy says, isn't it? I disagree with you respectfully, Your Honor. The policy does not cover vandalism, sprinkler leakage, building glass breakage, water damage, theft, or attempted theft if the building is more than 60 days vacant. Counsel, you say it's not covered. That's not a covered loss. Hold on. And the lower court agreed with us. Counsel, Counsel, Counsel. Your policy doesn't say it's not a covered loss. It merely says you will not pay. It doesn't exclude it from covered losses anywhere. It's not in the exclusions. And nowhere in this language does it say that if theft occurs in a building that's vacant for more than 60 days, it's excluded from coverage. It doesn't say that. It merely says we will not pay for any loss, even if it's a covered loss, if the building is vacant for more than 60 days prior to loss. That's all it says. The language that you skipped over is we will not pay for any loss or damage caused by any of the following. That's the identical language that appears in the exclusions as well. Wait a minute. Excuse me. What about the next phrase? Why is that in there? Even if they are covered losses. Why would that be there? If it's stopped after the word following, you may have a stronger argument. If it said we'll not pay for any loss or damage caused by any of the following, blah, blah, blah. But why would it put in the phrase even if they are covered losses, if your argument that they're not covered losses is sound? To be absolutely clear and express to the policyholder that if this language was not here, that theft or vandalism would be a covered loss. I agree with that. But they don't need that language. But they're saying to the policyholder, by adding the language, even if they are covered causing the loss, we don't want you to come back and say, hey, vandalism is ordinarily a covered loss, but because it's vacant, you're trying to take it out of coverage. This is an exclusion. It says we will not pay for a loss or damage caused by the following, even if it would have been a covered loss had the building not been vacant. It's an exclusion. It's saying that we're not covering this loss. And there's testimony in the record, and Judge Mitchell found that coverage could be purchased for a vacant building, and it would cost additional premium. That right now is irrelevant because the question becomes, what is the meaning of your insurance policy? And that's a question of law. And that is not a question of fact. I'm not raising a question of fact. What I'm pointing out is that the policyholder here purchased the wrong type of insurance. Brothers Future Holding, the policyholder, purchased insurance with this exclusion in it. They could have purchased insurance with it. If it's an exclusion, why isn't it listed in the exclusion section of your policy? It's not. It doesn't have to be. Well, it has to be or not. The question is, is it an exclusion? It is. It says we will not pay for loss or damage caused by the following. Well, if it were an exclusion, wouldn't you expect to find it in the exclusion section of your policy? The titles and the sections of the policy are there for organizational purposes. They don't add meaning to the terms. Okay. Go ahead. Banks such as Old National Bank here are not entitled to special treatment. And the Mortgager Clause doesn't rewrite the coverage grant beyond what the insurance company accepts. The undisputed facts of this case establish that from the inception of this insurance contract, there was no coverage for the vandalism or theft by virtue of the vacant condition of the building. No act by Brothers Future Holding or failure to comply with an affirmative obligation of the policy during the effective dates took this out of coverage. It was not covered from its inception. Now, the Murray case, which is one of the cases that Judge Mitchell relied upon, the language was much different. And the Mortgagee Clause used the word neglect. And the duty of vacancy was affirmatively undertaken by the policyholder because if the building was vacant, it would be suspended. That decision turns on the language of that particular policy. There was an obligation to keep the building vacant in order to have any coverage. That's not present in this contract. The Wells Fargo case, the Michigan case, attempts to distinguish Waterstone, the case that we're relying upon, based on the fact that there was an obligation on the part of the insured to live in the dwelling. That was a condition. That was an affirmative duty that they undertook that they breached. So that's the Michigan case. Now, the Commerce case, I agree with the court, is squarely same policy language. But the problem with the Commerce case, and it should be noted that the Minnesota Supreme Court is taking that case under review, is that it relies on young, a Minnesota Supreme Court case, and for a very broad and sweeping proposition that the act of the insured can create coverage where there's none in the underlying policy. And that act, or breach by the insured, while it doesn't use the word breach in Commerce, is what the court hung its hat on. We think it's improperly decided. Waterstone makes clear that the first step in the legal framework of the analysis is, is the loss covered in the first place? Under these undisputed facts, it was not covered from the inception. Why should the bank be put in a better position for premium that was never paid for a vacant building, for a risk that Peerless never agreed to accept, based on the mortgage clause? The mortgage clause is supposed to, all the mortgage clause does, Your Honor, respectfully, is create a separate contract that graphs onto the policy, onto that contract, all the terms that exist with the insured. But it is not a simple mortgage clause. This is a standard mortgage clause. Correct. So it is a separate contract as between the insurance company and the mortgagee, and the mortgagee has greater rights under this contract, this portion of the contract, than does the insured. Because under certain cases, you can deny coverage to the insured when you must still pay the mortgagee. Is that not the case in a standard mortgage clause? Yes. If there was a, if things like the insured failed to pay the premium, and the bank is asked to pay the premium, issues like the insured failed to give notice, failed to provide a proof of loss, failed to, failed to, but those are specific obligations. Those are duties in the event of loss. Those are conditions preceding that the insured agreed to undertake in order for there to be coverage. But how does it negate the standard mortgage clause, which, again, is a separate policy of insurance? It's not negating the separate contract. It's a separate contract, but because it's a separate contract, you have to look to see if there was coverage in the first place. If it's a non-covered loss in the beginning, then there is no coverage for the bank. So if I could give an example. But in the beginning, it was. I mean, that would have been covered, but for the action of the insured. So it was a covered loss, but it was excluded as a result of the inaction of the insurer. Is that correct? It is. Respectfully, I disagree. It was not because of an act. There was no doing of the insured. This was the condition of the property when it was insured, at the time it was insured. It was material to the risk. It was the risk that Perlis did not agree to accept. We all know that when we go on vacation, right, we have timers on our lots. We tell the mail to stop being delivered, the newspapers. We have neighbors stop by. Why? Because there's a risk of loss that's greater for theft and vandalism when somebody's not there. This insurance company never agreed to write that coverage in the first place. So it wasn't an act of the insured. You're saying that Perlis engaged in and provided insurance from the ab initio that was not available for the insurer, that it was not covered from the beginning. It's not an illusory contract. There's lots of coverage that's still in the policy. Why isn't it illusory? Because fire is coverage. If lightning had struck this building, if it had been burned down, there would be coverage. And the courts in Illinois allow an insurance contract to exclude from coverage items. And here we're excluding theft and vandalism when the building has been vacant for more than 60 days. And this building was vacant more than 60 days the day that the contract incepted. There was no act by the insured that took it out of the coverage, and there was no obligation on the part of the insured to lease the premises. They didn't affirmatively undertake to lease 31 percent of the building. Coverage wasn't suspended if they didn't do that.  The better reasoned approach, the one that takes a little bit more thoughtful process, is to look and see whether or not the loss was covered in the first place. And then, because it is a separate contract, the mortgagee cannot have coverage if the loss was not covered in the first place. I have a couple of questions for you. I think we understand your position on that. You make an argument here when we're talking about prejudgment interest. You make one argument in your brief that it should have been paid by brothers. Do you have any authority for that? Under the debt agreement, the bank is receiving interest on the payment. Well, that's not the point, though. The point is you've got any authority for the fact that they should have paid the prejudgment interest? You make it in your brief with sight and authority. Okay. We don't have a sight in it. If that's the argument that the Court thinks we're making, it was in our brief. The next question I have for you. I apologize. What we're saying is it's a windfall to get prejudgment interest plus interest from the policyholder at the same time. And prejudgment interest is a discretionary issue, and the whole point of it is to Excuse me. The point of it is if you pay them, their mortgage is paid off, and therefore there is no more interest owed to them by brothers, would there be? No, they're independent contracts. The cases say that the debt is separate from the insurance contract. So, in other words, if the mortgagee is paid by you, they still owe the mortgage? Yes. It doesn't satisfy the debt obligation. That's the whole purpose of the mortgage clause, is to ensure the interest of the mortgagee in the property. And it's been adjusted twice because brothers paid down the mortgage. Next question I have for you is you make the argument that the Circuit Court heard when it set, I believe it is, July the 15th of 2010 as the date for the commencement of prejudgment interest. You make that argument and you're brave. Do you still make that argument? That would be the very first date that prejudgment interest could apply. And our argument is that there shouldn't be any prejudgment interest because No, no, we have one exclusive of your argument. There shouldn't be any prejudgment interest at all. Yes. Your alternative argument is do you retreat from the argument that July the 15th, 2010, is not the appropriate date for the commencement of prejudgment interest? 2010, yes. You say that no money became dual second until December 16, 2013, when the court's order became a final judgment, I believe is your argument. But can I read you something that appears in one of your pleadings? Yeah. Does this sound familiar to you? In the event this court does decide to award old second prejudgment interest, the start date of the accrual of such interest would be July the 15th, 2010. Does that sound familiar to you? It does not. It doesn't? Well, it appears in your response to old second's motion for prejudgment interest. And under the doctrine of invited error, you can't argue that July the 15th, 2010, is not the appropriate commencement date. You told the court that was the appropriate commencement date if the court was going to award interest. We don't believe the court should award. I understand that argument. Okay. But if the court properly awarded interest, you can't argue that that's the improper date for its commencement under the doctrine of invited error. It would appear as if prejudgment interest is appropriate under the terms of your policy. It wouldn't commence until July the 25th of 2010, 30 days after old second submitted his proof of laws. Policy says pay in 30 days. And you make an argument as to post-judgment interest. Of course, the court didn't award him post-judgment interest. But is it your contention that if a litigant is entitled to both pre-judgment interest and post-judgment interest, then out of necessity, the last day for the computation of pre-judgment interest is the first day for the computation of post-judgment interest? I would agree with that. Okay. Can you still agree that pre-judgment interest is that determination is discretionary with the court? It is. Okay. I have nothing further. Anything else? Anybody? We'll give you some rebuttal. Thank you. Good morning, Justices. My name is Mike Collins. I'm with the firm of Collins & Collins, and I represent the old second national bank in this appeal. Prepared quite a bit, but after listening to your questioning, I think I'm going to pare this down to try to just add a couple of points. Why don't you pare it down to the real issue? Was it a covered loss or wasn't it a covered loss? And is vacancy within 60 days prior to the date of loss an act of the insured? And if it is, is the mortgagee still entitled to be paid? Yes, it is a covered loss. Yes, the mortgagee is entitled to be paid. And yes to the other questions. I knew you'd say yes to all of them, but tell me why. Okay, first of all, their brief confuses covered loss and covered perils. I think that the Court has hit upon it, that there's no doubt that theft and vacancy were covered perils under the policy. And you can find that they're covered perils under the policy by the pretty much all 2778 covered causes of loss. And the covered causes of loss are all direct physical loss, unless it's an exclusion in Paragraph B of the policy. And, Justice Hoffman, you went through those in your questioning, so I know you're familiar with those. Or a limitation in Paragraph 4 of Section 1 of the policy, which if you look at that, none of those even come close to applying. So when you're analyzing a theft and vandalism, covered causes of loss under the policy, they are. Now we move to the standard, actually I'll call it mortgagee provisions, because there's a number of provisions under the mortgagee provisions. And what they're trying to do in their brief is they take, under the mortgagee provisions, it's subsection B. So it's on C02811, which is the page of the policy on the mortgage holder provisions. And they're reading this paragraph, We will pay for covered loss of or damage to buildings or structures to each mortgage holder shown in the declarations in order of their precedence as their interest may appear. Now that clause, and it's actually specifically looked at, the same argument that they're making in their brief by the Texas case, the Southwest Homes case, where the court just says, well, yeah, that's the part of the mortgage holder provisions that is the loss payee clause. That's who you pay in accordance as their interest appear. But in terms of coverage, you've got to look down to subsection D, which is the standard mortgage clause, also known as the union clause. And I discovered in my research they call it the union clause so that the bank doesn't have to buy a separate policy. And these things have been around. I mean, you look at the cases in the 1800s, they've got these clauses. And under that clause is where you have the language that says that if it denies the claim of the insured, okay, so then if that denial of the claim is a result of the acts of the insured or disjunctively, the result of the insured's failure to comply with the terms of the policy, then the bank will still have rights. I know, but it says that there was no action by the insurer. What is your response to that? Our position is that occupancy or non-occupancy is an act of the insured. Our position is also that, and if you look, and this is in the record at C-02810, the vacancy provisions of the policy. Our position also is that the vacancy provisions in the policy are terms of the policy for which the insured must comply with to get coverage. And if you look even at the description, it says, paragraph 9, vacancy. Subparagraph 8, description of terms. So it uses the same word, terms, terms. It's a term of the policy for the insured to comply with. The insured didn't comply with those terms of the policy, and therefore it did not get coverage. So disjunctively. But from the beginning of the issuance of the insurance policy, they were not in compliance. Right. What's the effect of that? The right, and I will direct your attention to the Cullivary case, where this court actually addressed that issue, and it's an Illinois case in connection with insurance policies. And I cite that case in my estoppel arguments. And what that case says is that we don't care how long the property had been in vacant before you write your policy. When you write your policy, okay, there's coverage for that 60-day period. So that case directly addressed that issue, and that case directly held that there's coverage for that 60 days. So at the inception of this policy, there was even coverage for the insured. So had this loss occurred within that 60 days, insurers would have had right to coverage, too, under the holding of Cullivary. So those are really my main points that I want to make. Your Honor is correct. As I was looking through, I'm sorry, Justice is correct in that the weight of authority that I have seen around the country pretty much indicates that the Wisconsin case that they rely upon is an outlier. And I also took some exception that there's absolutely no Illinois authority on this because there was the case of, it was called? Reinhart. Reinhart, right. Thank you. And in Reinhart, you know, the issue wasn't the degree of occupancy. The issue was the type of occupancy. And the occupancy in the policy set wasn't supposed to be occupied or supposed to be only occupied for residential purposes, but it was occupied also as a bar later on. I mean, that case had also stuff in it about they had told the broker about it, which is similar here. The broker knew the policy was vacant. But anyway, they did find in that case that for the mortgagee under the mortgage clause. So, you know, we argue that, okay, if the type of occupancy is an act of the insured, why wouldn't the degree of occupancy be the act of the insured? It isn't as if the insured in this particular case had zero occupancy. I mean, the insured had, in the facts of the case, had a night watchman, or not a night watchman, but employed somebody that came in and checked on the property. None of this was disputed below. It had electricity hookups, and it had kept its machinery operating so that the property could be sold. So it just wasn't 31 percent occupancy in this particular case. Council argued to distinguish Commerce Bank that there was, the Minnesota courts looked to a case which had given it direction on how to read the standard policy and whether it was an act of the insured. Do you think there's a similar case in Illinois that we can look to in determining how to read  Oddly, there's not, and I'm kind of surprised about it. A lot of the standard mortgage decisions in Illinois, there is around the country. I'm familiar with the case that Council's talking about in Minnesota, where the Minnesota Supreme Court had a prior opinion on the standard mortgage clause that acts of the insured embrace any act of the insured, whether it's related to the policy or not. I saw a similar case, it's in my brief, but I mean there was even some courts, this was a district court case, have gone so far as to say in this particular policy, there was an exclusion for theft in the vessel that was insured. When it was not insured for theft, the theft occurred because of the negligence of the insured, and they gave them coverage under the acts of the insured. Nobody's really gone that far, and we don't need to here. I want to catch on one thing you said, Bill. The existence of a night watchman hookup of electricity is totally irrelevant, because the vacancy provision requires that the lessee or the sub lessee must conduct customary operations, and the same applies to the building owner, and there's no question under these facts. No one was conducting any customary operations. No doubt. I'm using just vacancy. And that goes all the way back to 2005. Sure. When they stopped, when the prior owners stopped. That's true. Their slaughterhouse business. There were never any customary operations. This was a vacant building. Yes. And it was a vacant building since 2005. Yes. Okay. But your argument would be that when the issuance of the renewal policy, there would have been coverage at least for the first 60 days. They renewed it with the same policy and the same clause. The other two arguments with respect to the interest that is in the discretion of the child court, I don't know if I'm allowed to do it, but actually when I was preparing for oral argument, I found a really old Illinois Supreme Court. Well, don't do it if it isn't in your brief. It's kind of like checking and raising a card game. People don't like it. Okay. Well, we think that the interest was properly awarded. The whole business about, and they start their brief out where the bank's going to get paid by somebody else, has plagued this case from the get-go. The bank hasn't gotten paid by anybody else other than what they've already received credit for. They've received credit for the sale of the building. They've received credit that amounts of money the guarantor paid. They've received credit of other collateral that's been liquidated, all that Judge Mitchell gave them. And so there's nothing in the record to indicate we're going to get paid. Do you also agree with the proposition that if a litigant is entitled to both pre-judgment interest and post-judgment interest, that the termination date of pre-judgment interest must be the commencement date of post-judgment interest? I don't see how you could justify it any other way. Well, no, because they have made an argument. They've made an argument attacking the date to be used because the judgment wasn't enforceable. And, of course, the Supreme Court said it doesn't have to be enforceable. It just has to be an award, even if it's not even an appealable, that that can be the commencement date for post-judgment interest. Oh, well, I wasn't aware of that case, but thank you. Because, you know, that was my argument is there's a difference between a final judgment and an appealable and enforceable judgment. And the final one is what this one was. It determined all the rights between the bank and peerless. And there were other parties in the case on other claims against other parties that wasn't decided, and they think that they shouldn't have to pay until then. So thank you for that. I don't have anything further. The case, by the way, is the Illinois State Tollway Authority, where the Supreme Court said interest is assessed as a result of a judgment entered upon any such award begins to accrue on the date of the award is made without regard to the fact that the award may not be either enforceable or appealable when made. And they're talking about the interest here in Title 202-1303, which is post-judgment interest, not pre-judgment interest. Thank you. Well, that is, by the way, the ending date that this trial judge put on it, and the pre-judgment interest would be the commencement date for post-judgment interest if you're entitled to interest. I mean, he had the right date. The judge, as you pointed out, well. . . And he changed it. Originally his order. . . He originally had the later date, and he moved it on my motion to the earlier date. July the 23rd. . . Of 2010. So he picked the July 2010 date. Well, he picked July the 15th, 2010 as the commencement date of pre-judgment interest and ran it until July the 23rd, 2013. And Peerless argues that it shouldn't have been July the 23rd, 2013. It should have been December 16th, 2013, which is the date upon which all claims were terminated. But the post-judgment interest is based upon the award itself, not the judgment entered on the award. So according to the Supreme Court, it would run from post-judgment interest, to the date of the award itself, which would have been. . . I think that was July 23rd, 2013. Yes, July 23rd, 2013. Right. It would be pre-judgment interest prior to that. Yes. Okay. That would have been the end date. That's my understanding. Okay. Thank you. We're all. . . Thank you. I just want to focus in on the language of the Mortgage Holder Clause, which is in Appendix Citation 247, or Record Citation CO-2219. 2B says, We will pay for covered loss of damage. It doesn't use the word covered cause. It says covered loss. Council is trying to suggest that because theft and vandalism is a covered cause of loss under certain circumstances in the policy, that you don't need to analyze it. But the language here is specific. It says covered loss. And the Vacancy Clause makes clear that theft and vandalism are not covered losses if the building is vacant for more than six weeks. You know, I hear your argument, and I don't understand the language of the policy. The language of the policy says we will not pay even if they are covered losses. So you can't have it both ways. You can't say that they are not covered losses even if. . . You can't then go and say we will not pay even if they are covered losses. I don't think there's an inconsistency here because it's not saying covered cause of loss here. It's saying covered loss. And when it says even if they are covered losses under the vacancy provision, that's to reinforce to the policyholder that while vandalism or theft are covered losses, when the property's condition is that it's vacant for more than 60 days, we will not cover that loss. No, it says you won't pay. Well, we won't pay. We won't pay. It's not. . . It's not. . . We're not using the word covered cause. We're saying that it's not. . . It's not. . . We will not pay for covered loss or damage. Would you agree with me that if. . . It would be a big difference if it was in the exclusion section of your policy. It would be a big different argument. I don't see that it has to be because this is broader than just what the exclusion is. It is saying that they must establish covered loss or damage first, and they can't. And there is authority. There's a number of cases that we cited that talk about the mortgage clause and say that it cannot be expanded, not in the vacancy situation, but it cannot be expanded to create coverage where the underlying policy does not afford coverage. And that's the General Motors case, that's the Western Leasing case, and that's even the vision case that the Seventh Circuit cited here, where the underlying, where the insurance company did not have to pay for loss or damage because it was never covered under the policy in the first instance, the mortgagee doesn't have greater rights. And if you were to find coverage in this case. . . What about that 60-day window? Wasn't it covered then in those first 60 days, or do you disagree with your opponent? You said. . . You understand my question? I do. First of all, some context. The first policy, this policy was in effect for a whole year before, and it was renewed. The bank was not listed as a mortgagee. The second time the policy was issued, the bank was not listed as a mortgagee. It was during the policy term that they asked to be added. Somebody from the collateral department asked to add them as a party. So this loss was never covered for theft and vandalism, and the bank's interest was not added until into the term of the second policy, and there was no act of the insured that took it out. I wanted to go back to a question about Illinois authority. Judge Aspin, former circuit court judge and federal court judge, in the Potomac case, while the decision in the Potomac case, the holding itself, deals with whether or not arson is considered vandalism, the court addresses the issue of that the mortgagee, under the mortgage holder clause, cannot have coverage greater than what the policy holder has, and that's what the Potomac case stands for, and that's the proposition that we're trying to ask this court to enforce in Illinois. It makes no sense that the bank can get coverage for something that the policy holder never paid premium for, that the insurance company never agreed to accept. That's all I have. Counselors, thank you. Thank you. The matter will be taken under advisement. Madam Clerk, call the next case.